American Funding, LLC
30 Park Road
Tinton Falls, NJ 07724

| | |
|---|---|
| AMERICAN FUNDING, LLC, | SUPERIOR COURT OF NEW JERSEY COUNTY OF MONMOUTH DOCKET NO.: |
| Plaintiffs, | |
| v. | Civil Action |
| Pursuit Beverage Company LLC / Pursuit Beve and Dominick Voso | AFFIDAVIT OF CONFESSION OF JUDGMENT |
| Defendants. | |

STATE OF NEW JERSEY     )
                        )
COUNTY OF               )

Dominick Voso                        , being duly sworn, deposes and says:

1.      I am principal, owner, and an officer of  Pursuit Beverage Company LLC / Pursuit Beve

("Merchant Defendant"), a            located at    500 E IL RT 22
                                                   Lake Zurich, IL, 60047

and as such, I have the authority to act on behalf of Merchant Defendant.

2.      I reside at    346 Montabello
                       Bloomingdale, IL 60108

3.      I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of

this Court.

4.      Merchant Defendant hereby confesses judgment and authorizes entry of judgment

in favor of Plaintiff and against Defendants in the Superior Court of New Jersey, Monmouth

County, in the sum of  $149,000.00 less any payments timely made pursuant to the secured

Merchant Agreement dated 10/08/2015, plus legal fees to Plaintiff calculated at twenty-five

percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest

at the rate of 16% per annum from 10/08/2015, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.    In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Superior Court of New Jersey, Somerset County, against me personally in the sum of $149,000.00 less any payments timely made pursuant to the Merchant Agreement dated 10/08/2015, plus legal fees to Plaintiff calculated at twenty-five (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest rate of 16% per annum from 10/08/2015, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated 10/08/2015, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated 10/08/2015, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without

prejudice to any and all rights of Plaintiff, which reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession on this _9th_ day of _October_, 2015.

By: _____

Dominick Voso
Individually and on behalf of
Pursuit Beverage Company LLC / Pursuit Beve

Sworn to before me this

_9_ day of _OCTOBER_, 2015.

_____

Notary Public

OFFICIAL SEAL
RICHARD FLYNN
Notary Public - State of Illinois
My Commission Expires Mar 26, 2017

# WARRANT OF ATTORNEY

STATE OF NEW JERSEY    )

COUNTY OF MONMOUTH )

         Dominick Voso       , being duly sworn deposes and says:

1. Pursuant to and in furtherance of an Affidavit of Confession of Judgment executed by me on  10/08/2015, I hereby authorize Thomas M. Lenney, Esq. of the Lenney Law Firm to appear in the Superior Court of New Jersey, Monmouth County on my behalf and on behalf of my business entity  Pursuit Beverage Company LLC / Pursuit Bever for the purposes of confessing judgment in favor of American Funding Group in an action of debt.

2. I further stipulate as to take no action to delay the entry of judgment.

By: _____

        Dominick Voso

        Individually and on behalf of

        Pursuit Beverage Company LLC / Pursuit

Sworn to before me this

_9_ day of _OCTOBER_, 2015

_____

    Notary Public

OFFICIAL SEAL
RICHARD FLYNN
Notary Public - State of Illinois
My Commission Expires Mar 26, 2017



AMERICAN
FUNDING GROUP

## AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES

### [THIS IS NOT A LOAN or LENDING AGREEMENT]

This Future Receivables Purchase and Sale Agreement (the "Agreement") is dated  October 08, 2015 and entered into between American Funding Group, a FL company having a place of business at 1855 Gri  n Road, Suite A-370, Dania Beach, FL 33004 herea  er known as (Purchaser") and the business identified below ("Seller").

Seller:

Business Legal Name: Pursuit Beverage Company LLC D/B/A: Pursuit Beverage Compan State of Incorpora  on IL

Type of en  ty:

Physical Address #1: 500 E IL RT 22     City: Lake Zurich     State: IL   Zip: 60047

Physical Address #2:     City:     State:   Zip:

Mailing Address: 500 E IL RT 22     City: Lake Zurich     State: IL   Zip: 60047

Date Business Started (mm/yy)     Fed ID: 462882457

Contact Name: Dominick Voso     Posi  on: owner

Phone: 6304221522   Fax:     Email:     Website:

Bank Name Chase     Address:

ABA Rou  ng No.:     Account No.: 00000521117536     [A  ach voided check]

| Purchase Price<br>Price paid by Purchaser to Seller for Purchased Amount of Future Receivables.<br><br>$100,000.00 | Purchased Amount<br>Amount of Future Receivables purchased by Purchaser to be collected by Purchaser.<br><br>$149,000.00 | Speci  ed Percentage<br>Percentage of Future Receivables that Purchaser will collect. 25% | Fixed Daily Amount<br>Ini  al es  mate of the daily amount of the Speci  ed Percentage expressed in dollars.<br>$2,257.58 |
|---|---|---|---|

Principal method of payment of Purchased Amount from Seller to Purchaser (check all that apply): ACH



**AMERICAN**
FUNDING GROUP

**PURCHASE AND SALE:** Pursuant to the terms of this Agreement, Purchaser purchases from Seller, and Seller sells to Purchaser, Seller's current and future customer receivables (the "**Future Receivables**") in the amount specified above (the "Purchased Amount"), including, without limita on, accounts and rights to the payment of funds from Seller's customers' use of credit and debit cards (the "**Card Receivables**"). Seller promises to cause the Purchased Amount to be delivered to Purchaser by assigning to Purchaser all of Seller's rights, tle and interests in, to and under the Future Receivables. Seller shall, on a daily basis, deliver a por on of the Future Receivables in an amount equal to the Speci ed Percentage mul plied by all of Seller's Card Receivables collected for such day un l the Purchased Amount has been paid to Purchaser. Seller and the undersigned Guarantor(s) hereby cer fy that, as of the date hereof, the informa on in all applica ons and other documents delivered by Seller to Purchaser (collectively, the "**Seller Applica on**") is accurate and complete in all respects.

**CONDITIONS TO PURCHASE AND SALE:** As a condition precedent to Purchaser's obligation to purchase the Future Receivables and pay the purchase price specified above (the "**Purchase Price**") for the purchase of the Purchased Amount of Future Receivables, Seller shall demonstrate to Purchaser, to the sa sfac on of Purchaser as determined in its sole and absolute discre on, that Purchaser shall have the uninterrupted and con nuous ability to collect Seller's Future Receivables during the term of this Agreement. If "Split funding from Processor" is indicated above, Seller shall execute a processing order (the "**Processing Order**") which, among other things, shall irrevocably authorize and direct a credit and debit card processor acceptable to Purchaser servicing Seller (the "**Processor**") to pay the Specified Percentage of the daily Card Receivables, less Processor's fees and charges, to an account designated by Purchaser. If either "ACH from Seller Account" or "ACH from Dedicated Seller Account" is indicated above, Seller shall execute such documents as Purchaser and Operator (as defined in the Terms and Condi ons a ached hereto) shall reasonably deem necessary to e ect the daily transfer of the Speci ed Percentage of the daily Card Receivables to Purchaser, including, without limita on, an ACH authoriza on form. Upon receipt by Purchaser of the Speci ed Percentage of two (2) processing days of Card Receivables (the "**Preliminary Amount**"), Purchaser shall pay to Seller the Purchase Price and shall apply the Preliminary Amount rst to reduce fees Purchaser is en tled to receive hereunder and therea er against the Purchased Amount. If, for any reason, Purchaser elects not to deliver the Purchaser Price to Seller, Purchaser shall promptly return to Seller the Preliminary Amount.



**AMERICAN**
FUNDING GROUP

LIMITED GUARANTEE BY PRINCIPALS: AS CONSIDERATION FOR PURCHASER ENTERING INTO THIS AGREEMENT, EACH OF THE UNDERSIGNED PRINCIPALS, WHETHER SHAREHOLDERS, PARTNERS, MEMBERS OR OTHER OWNERS, OFFICERS, DIRECTORS OR OTHER REPRESENTATIVES OF SELLER (COLLECTIVELY, "PRINCIPALS") HEREBY PERSONALLY AND UNCONDITIONALLY GUARANTEE TO PURCHASER AND ITS ASSIGNS THAT (I) ALL INFORMATION PROVIDED TO PURCHASER IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS IT CONTEMPLATES IS TRUE, ACCURATE AND COMPLETE IN ALL MATERIAL RESPECTS, and (II) SELLER SHALL NOT REPLACE THE PROCESSOR ACCEPTED BY PURCHASER OR ENGAGE OR UTILIZE THE SERVICES OF ANY OTHER OR ADDITIONAL PROCESSOR BEFORE PURCHASER HAS RECEIVED THE ENTIRE PURCHASED AMOUNT OF FUTURE RECEIVABLES.    Each Principal agrees to and hereby makes each representa on, warranty and covenant set forth in Sec ons 2 and 3 of this Agreement (and each subsec on thereof), which representa ons, warran es and covenants shall survive the termina on of this Agreement as provided in Sec on 4.9 hereof.

FAIR CREDIT REPORTING ACT CONSUMER DISCLOSURE AND GENERAL AUTHORIZATION. In connec on with Seller selling future receivables to Purchaser, each of Seller and Principals understand that a consumer report as defined in the Federal Fair Credit Reporting Act as amended ("FCRA"), 15 U.S.C. 1681 and following, may be obtained by the Purchaser from a consumer repor ng agency ("CRA"). Seller and Principals (which term shall include its guarantors in this consent) understand that this report may include informa on with respect to public record informa on, criminal records, motor vehicle opera on history, educa on records, names and dates of previous employers, reason for termina on of employment and work experience, and/or credit worthiness, capacity and standing, character, general reputa on, personal characteris cs, or mode of living, such informa on may be used to evaluate whether Seller is an appropriate candidate for transac ng with Purchaser and this determina on may be adverse to Seller. The informa on obtained will not be provided to any par es other than to designated authorized representa ves of the Purchaser. Seller and Principals further understand that the CRA may not give out information about Seller or Principals to Purchaser without Seller's or such Principal's written consent, as applicable. Seller and each Principal hereby authorize Purchaser now, or at any me while it is party to an agreement with Purchaser or otherwise engaged by Purchaser, to obtain a consumer report on Seller or such Principal. This authorization does not include the release of Seller's or any Principal's medical information. A copy, fax or scan of this consent shall be considered as e ec ve and valid as the original. Seller understands that in the event any adverse ac on is taken against Seller based in whole or in part on the consumer report, Seller shall be provided with the name of the CRA and a copy of the report as well as a description of Seller's rights under the FCRA.

On request, California, Minnesota, and Oklahoma residents, can obtain a copy of any consumer credit report requested by Purchaser.

On request, Florida residents, can be informed if a consumer credit report has been requested on Seller by Purchaser as well as the name of the CRA providing the report.

The Principals, Seller and its guarantors have read and understand the above and authorize Purchaser to perform the above inves ga ons.



Initials:
Date:

**AMERICAN**
FUNDING GROUP

---

AGREEMENT: To the extent set forth herein, each of the undersigned shall be obligated upon execu on of the Agreement to all terms of the Agreement, including the jury trial waiver, class ac on waiver and other terms and condi ons set forth on the pages that follow. The person execu ng this Agreement on behalf of Seller represents and warrants that he/she is authorized to do so and to bind Seller to all of the terms and condi ons set forth herein. Each of the undersigned represents and warrants that the informa on provided herein and as entered by each of the undersigned in each of Purchaser's forms is true, accurate and complete in all respects. If any such informa on is false or misleading, Seller shall be deemed in material breach of this Agreement and Purchaser shall be en tled to all remedies available under law. As of the date appearing above, Seller and each Principal and guarantor have agreed to the terms of this Agreement that include (collectively, the "**Agreement**"): (i) the Seller Applica on submi ed to Purchaser in rela on hereto; (ii) the above iden ca on of Seller; (iii) the above purchase and sale; (iv) the above personal guarantees and Fair Credit Repor ng Act and general credit check consent; and (v) the a ached terms and condi ons:

| | |
|---|---|
| **SELLER** | |
| Dominick Voso | |
| Print name and  tle | Signature |
| **Principal 1 / Guarantor 1** | |
| Dominick Voso | |
| Print Name | Signature |
| **Principal 2 / Guarantor 2** | |
| Print Name | Signature |
| **Principal 3 / Guarantor 3** | |
| Print Name | Signature |
| **PURCHASER** | |
| Print name and  tle | Signature |



## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (and incorporated by reference into) the Merchant Agreement. Seller should keep this important legal document for Seller's records.

DISBURSMENT OF ADVANCE PROCEEDS. By signing below, Seller authorizes Buyer to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credit to the checking account indicated below (or a substitute checking account that the seller later identifies and is acceptable to the buyer) (hereinafter referred to as the ("DESIGNATED CHECKING ACCOUNT") the authorization is to remain in full force and effect until the BUYER has received written notification from the SELLER of its termination in such time and such manner as to afford Buyers and Seller's depository bank a reasonable opportunity to act on it.

BUSINESS PURPOSE ACCOUNT.    By signing below, seller attests that the designated Checking account was established for business purpose and not primarily for personal, family or household purposes.

MISCELLANEOUS.    Buyer is not responsible for any fees charged by seller's bank as a result of credits or debits initiated under this agreement. The origination of ACH to seller's account must comply with the provisions under U.S. Law.

I, (WE) Pursuit Beverage Compi Hereby authorize, American Funding Group to electronically (ACH) debit the bank account below, which I am a signer:

Bank Name: Chase _____ Branch_____

ABA Routing: _____ DDA Account 00000521117536 _____

Amount of ___$2,257.58____ (or) percentage of each banking Deposit: %_____

On the following days: MONDAY-FRIDAY

The authorization is to remain in full force and effect until Purchaser has received written notification from me at least 5 banking days prior of its termination to afford Purchaser a reasonable opportunity to act on it.

Signer: (Print Name/Title) Dominick Voso _____ Date: _10-9-15_

X _____

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

American Funding Group                    866-950-7575



## ORIGINATION FEE ADDENDUM

Authorization Agreement for Payment

(I/we) hereby authorize Nightstar Capital Inc., hereinafter named the "COMPANY" to initiate single (debit/credit) entries to (my/our) (Checking/Savings Account) in the amount of $6,000.00 as indicated and named on the attached voided check as the depository financial institution for the amount listed and referenced above. The undersigned hereby authorizes the funding to deduct the total amount below from the gross funding (advance) amount and to make such payment directly to the company. If any such debit(s) should be returned NSF, (I/we) authorize the "COMPANY" to collect such debit(s) by electronic debit from my account. I am a duly authorized check signer on the financial institution account named on the attached voided check, and authorize all of the above as evidenced by my signature below.

Nightstar Capital: $ 8,000.00
Discount: $ 2,000.00
TOTAL: $ 6,000.00

Legal Name: Pursuit Beverage Company LLC

DBA: Pursuit Beverage Company LLC

Owners Name: Dominick Voso

Signature: _____

Date: _____10-9-15_____



**AMERICAN**
FUNDING GROUP

AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES
TERMS AND CONDITIONS

1. PROCESSING TERMS AND ARRANGEMENTS

1.1. Processing Agreement. Seller understands and agrees that this Agreement, including the authorizations to access Seller's accounts (including the Account) set forth herein and the Processing Agreement (as defined below), irrevocably authorize each credit and debit card processor used by Seller (each, a "**Processor**") and Operator (as defined below) to pay the cash attributable to the Specified Percentage of Future Receivables to Purchaser rather than to Seller until Purchaser receives the cash attributable to the entire Purchased Amount of Future Receivables from Processor and Operator. These authorizations and instructions may be revoked only with the prior written consent of Purchaser. Seller agrees that Processor and Operator may rely upon the instructions of Purchaser, without any independent verification, in making the cash payments described above. Seller waives any claim for damages it may have against Processor or Operator in connection with actions taken based on instructions from Purchaser, unless such damages were due to such Processor's or Operator's failure to follow Purchaser's instructions. Seller acknowledges and agrees that (a) Processor and Operator will be acting on behalf of Purchaser with respect to the Specified Percentage of Future Receivables until the cash attributable to the entire Purchased Amount of Future Receivables has been remitted by Processor and Operator to Purchaser, (b) Processor and Operator might or might not be affiliates of Purchaser, (c) Purchaser does not have any power or authority to control Processor's or Operator's actions with respect to the processing of credit and debit card transactions or remittance of cash to Purchaser, (d) Purchaser is not responsible and shall not be liable for, and Seller agrees to hold Purchaser harmless for, the actions of Processor and Operator, and (e) funds representing the Specified Percentage of Future Receivables in the possession of Processor or Operator constitute property owned solely by Purchaser and Seller disclaims any and all interest therein. For purposes of this Agreement, the term "**Operator**" shall mean any affiliate of Purchaser or any other person or entity Purchaser designates to debit or otherwise withdraw (via the Automated Clearing House ("**ACH**") system, electronic checks, wires, or otherwise) any amounts from Seller's or any Principal's accounts as authorized or permitted by this Agreement.

1.2. Instructions to Processor. Seller hereby irrevocably instructs Processor to hold the Specified Percentage of Future Receivables on behalf of Purchaser and to remit directly to Purchaser the cash attributable thereto at the same time it remits to Seller the cash attributable to the balance of the Future Receivables. Seller acknowledges and agrees that Processor shall provide Purchaser with any and all reporting to which Seller is normally entitled in respect of Seller's credit and debit card processing through Processor. Seller hereby (i) authorizes Purchaser to contact any past, present or future Processor of Seller, its predecessors or affiliates, to obtain any information that Purchaser deems necessary or appropriate regarding any of their transactions with such Processors, and (ii) authorizes and directs such Processors to provide Purchaser with all such information in compliance with this



Initials [signature]
Date: 10-29-15

American Funding Group          866-950-7575          5



sec on. Such informa on may include informa on to verify the amount of Card Receivables previously processed on behalf of Seller, its predecessors or a liates, and any amounts that may have been paid to, o set, held or reserved by, such Processors. Without limi ng the generality of the foregoing, Seller authorizes Purchaser to contact any past, present or future Processor of Seller, its predecessors or a liates, to con rm that Seller is exclusively using the Processor accepted by Purchaser in accordance with this Agreement.

1.3.  Indemni ca on. Seller and each Principal indemni es and holds each of Processor and Operator, their respec ve o cers, directors, a liates, employees, agents and representa ves harmless from and against all losses, damages, claims liabilities and expenses (including reasonable attorneys' fees) su ered or incurred by Processor or Operator resul ng from ac ons taken by Processor or Operator in reliance upon informa on or instruc ons provided to Processor or Operator by Purchaser. Seller and Each Principal hereby indemni es and holds harmless the Purchaser from any claim or asser on of any kind that this Agreement is other than a purchase and sale.

1.4.  Limita on of Liability. In no event will Processor, Operator or Purchaser be liable for any claims asserted by Seller under any theory of law, including any tort or contract theory, for lost pro ts, lost revenues, lost business opportuni es, exemplary, puni ve, special, incidental, indirect or consequen al damages, each of which is hereby expressly waived by Seller.

1.5.  Processor Commissions. Seller understands and agrees that Processor will charge a fee or commission for processing receipts of Future Receivables (the "**Processor's Fee**") as set forth in the processing agreement (the "**Processing Agreement**") and that the Processor's Fee will be deducted from the por on of the Future Receivables payable to Seller and not from the cash a ributable to the Speci ed Percentage of Future Receivables payable to Purchaser.

1.6.  No Modi ca ons. Seller will comply with the Processing Agreement and will not terminate or modify the Processing Agreement in any manner that could have an adverse effect upon Purchaser's interest, without Purchaser's prior written consent.

1.7.  Account; Authoriza on to withdraw from Accounts. Seller represents and warrants that Seller's sole bank account ("Account") into which all settlement proceeds of Future Receivables will be deposited is that account iden ed by account name, account number and bank name and address that is shown on the face of the voided check that Seller shall provide to Purchaser along with this Agreement, the delivery of which voided check is a condition precedent to Purchaser's obligations under this Agreement. Seller will not use any account other than the Account for the purpose of deposi ng Future Receivables. If Processor transfers to the Account or any other account of Seller or Principal(s), any funds that should have been transferred to Purchaser pursuant to Sec ons 1.1 and 0 hereof, or if Seller otherwise has Future Receivables deposited other than to the Account, then the Principal or a liate of Seller in possession thereof shall immediately segregate and hold all such funds in trust for Purchaser's sole and exclusive bene t. In any such circumstance, Seller shall maintain in the Account a minimum



balance equal to Purchaser's undivided interest in such funds or the Specified Percentage multiplied by Seller's average daily Card volume for three (3) days of processing ("Minimum Balance"), until such funds are paid to Purchaser. Seller and each Principal hereby irrevocably authorize Purchaser, Processor and Operator to debit or otherwise withdraw (via the ACH, electronic checks, wires or otherwise) such funds and any fees, costs, changes or other amounts Purchaser is en tled to receive hereunder, directly from all such accounts, including the Account, and shall not revoke or cancel such authoriza ons un l such me as Purchaser has received the en re Purchased Amount of Future Receivables and any other amounts Purchaser is en tled to receive hereunder. Seller and Principal(s) acknowledge and agree that Purchaser, Processor and Operator may issue pre-notifications to Seller's and Principal(s)'s financial ins tu on(s) with respect to such debit, withdrawal and other transac ons. Within two business days of any request by Purchaser, Seller shall provide, or cause Processor, Operator, the applicable nancial ins tu on(s) or Principal(s) to provide, Purchaser with records and other informa on regarding Seller's credit and debit card sales, the Account and any other accounts of Seller or Principal(s) and its a liates. Seller and Principal(s) hereby authorize and direct the applicable nancial ins tu on(s) to provide Purchaser with all such informa on in compliance with this sec on.

1.8. <u>Processing Trial</u>. After this Agreement has been signed by Seller and Principal(s) but prior to Purchaser's determina on as to whether to pay the Purchase Price, Seller agrees to permit Purchaser to instruct Processor and Operator to conduct a short processing trial (the "Processing Trial") to ensure that Seller's credit and debit card transactions are being correctly processed through Processor and that the cash a ributable to the Speci ed Percentage of Future Receivables will be appropriately remi ed to Purchaser. Purchaser agrees to make a determina on as to whether to purchase the Purchased Amount of Future Receivables promptly a er the commencement of the Processing Trial. Seller hereby authorizes Purchaser and its designees, in connec on with the Processing Trial to debit or withdraw from Seller's accounts, including the Account, any fees Purchaser is entitled to receive hereunder. If Purchaser elects to purchase the Purchased Amount of Future Receivables, then all of the cash received by Purchaser in connec on with the Processing Trial prior to the payment of the Purchase Price shall be applied rst to reduce fees Purchaser is en tled to receive hereunder and therea er shall be credited towards the Purchased Amount. Nothing herein shall create an obliga on on behalf of Purchaser to purchase any Future Receivables, and Purchaser expressly reserves the right to not purchase the Purchased Amount of Future Receivables and not pay the Purchase Price to Seller. If Purchaser decides to not purchase the Purchased Amount of Future Receivables and not pay the Purchase Price then this Agreement shall have no further e ect and Purchaser shall, promptly a er receipt from Processor or Operator, return to Seller any cash received by Purchaser in connec on with the Processing Trial. Purchaser shall have no obliga on to pay Seller any interest or other compensa on with respect to any such returned cash.

1.9. <u>Reliance on Terms</u>. The provisions of this Agreement are agreed to for the bene t of Seller, Principal(s), Purchaser, Processor and Operator notwithstanding the fact that Processor and Operator are not par es to this Agreement.

Initials: [handwritten]
Date: [handwritten]

American Funding Group                    866-950-7575                                        7



AMERICAN
FUNDING GROUP

1.10. **Method of Payment**. Purchaser may elect, at its sole discre on, to use any and all methods to collect the Purchase Amount under this Agreement. However, the primary method (un l other wise determined by Purchaser ac ng at its sole discre on), shall be as indicated on the applica on form associated with this Agreement, which choices include: (i) split funding from Processor, pursuant to which Seller shall instruct its Processor to pay the Speci ed Percentage directly to Purchaser; (ii) ACH from Seller Account, meaning Purchaser shall have the right to ini ate ACH transac ons on the Account for the Speci ed Percentage; or (iii) ACH from dedicated Seller Account, meaning that Purchaser has the right to oblige Seller to establish an account into which all of its receivables shall be deposited (a "Dedicated Account") over which Purchaser is hereby granted power of attorney to cause the institution holding the Dedicated Account to remit the Speci ed Percentage to Purchaser and the balance of any amounts remaining to the Seller's Account. So long as Seller has liabili es hereunder, it agrees not to make any transac ons in the Dedicated Account that have not been approved in advance by Purchaser.

1.11. **Fixed Payment**. While the obliga on to pay of Seller extends to the Speci ed Percentage only, Seller hereby agrees that Purchaser may debit from its Account or Dedicated Account a xed daily payment that is the ini al es mated Speci ed Percentage based on informa on provided to the Purchaser hereunder (the "**Fixed Daily Payment**"). The Fixed Daily Payment shall be adjusted on a weekly or more frequent basis as reasonably determined by Purchaser so that, in the aggregate, Purchaser is not taking more than the Speci ed Percentage when receiving the Purchased Amount.

2.  REPRESENTATIONS, WARRANTIES & COVENANTS

    Seller and Principal(s) represent, warrant and covenant the following as of the date hereof and during the term of this Agreement as follows:

2.1. **Seller Contractual Covenants**. Un l such me as the Purchaser has received all payments due to it under the terms hereof, Seller agrees as follows (collectively, the "**Seller Contractual Covenants**"): (i) to not materially change the nature of the business it conducts from the type of business originally disclosed to Purchaser in connec on with this Agreement or to Processor as of the date of this Agreement; (ii) to exclusively use Processor for the processing of all of its credit and debit card transac ons; (iii) to not change its arrangements with Processor in any way that is adverse to Purchaser; (iv) to not take any ac on that has the e ect of causing the processor through which any credit or debit card transac ons are se led to be changed from the Processor ini ally approved by Purchaser to another, or addi onal Processor; (v) to not take any ac on to discourage the use of credit and debit cards and to not permit any event to occur that could have an adverse e ect on the use, acceptance or authoriza on of credit and debit cards for the purchase of Seller's services and products; (vi) to not open a new account other than the Account to which credit and debit card se lement proceeds will be deposited; (vii) to not take any ac on to cause Future Receivables to be se led or delivered to any account other than the Account; (viii) to not revoke or cancel any of the authoriza ons granted to any of Purchaser, Processor or Operator to debit or otherwise withdraw from, or access the Account or any other account of Seller described in this Agreement; (ix) to not sell, dispose, convey or otherwise transfer its business without

American Funding Group                    866-950-7575                                        8



**AMERICAN**
FUNDING GROUP

the express prior wri en consent of Purchaser; (x) to not sell, assign, convey, dispose of, or otherwise transfer any of its Future Receivables to any person or en ty other than Purchaser; (xi) to not grant or permit any Lien (as de ned below) upon any of its accounts receivable, including Future Receivables, or the Account for the bene t of any person or en ty other than Purchaser; and (xii) maintain a Minimum Balance (as de ned above) in the Account to the extent required by the terms of this Agreement. Purchaser, Seller and Principals acknowledge and agree that neither the bankruptcy of Seller nor Seller going out of business, in and of itself, cons tutes a breach of the Seller Contractual Covenants.

2.2. Business Informa on. All informa on ( nancial and other) provided by or on behalf of Seller to Purchaser in connec on with the execu on of, or pursuant to, this Agreement is true, accurate and complete in all respects. Seller shall furnish Purchaser, Processor and Operator such informa on as Purchaser may request from me to me.

2.3. Reliance on Informa on. Seller acknowledges and agrees that all informa on ( nancial and other) provided by or on behalf of Seller and Principal(s) has been relied upon by Purchaser in connec on with its decision to purchase the Purchased Amount of Future Receivables from Seller.

2.4. Compliance. Seller is in compliance with any and all applicable federal, state and local laws and regula ons and rules and regula ons of card associa ons and payment networks. Seller possesses and is in compliance with all permits, licenses, approvals, consents, registra ons and other authoriza ons necessary to own, operate and lease its proper es and to conduct the business in which it is presently engaged.

2.5. Authoriza on. Seller and the person(s) signing this Agreement on behalf of Seller have full power and authority to enter into and perform their obliga ons under this Agreement and the Processing Agreement, all of which have been duly authorized by all necessary and proper ac ons.

2.6. Insurance. Seller shall maintain insurance in such amounts and against such risks as are consistent with past prac ce and shall show proof of such insurance upon the request of Purchaser.

2.7. Change of Name, Loca ons, Etc. Seller does not and shall not conduct Seller's business under any name other than as disclosed to Purchaser and Processor and shall not change its place of business without the prior wri en consent of Purchaser. Seller shall not change it legal name, en ty type or state of forma on unless it has provided Purchaser with at least thirty (30) days prior wri en no ce thereof and any documents, agreements and informa on requested by Purchaser with respect thereto.

2.8. Seller Not Indebted to Purchaser. Seller is not a debtor of Purchaser as of the date of this Agreement and this Agreement is not a loan nor does it establish a lending rela onship. Seller has sold the Purchased Amount to Purchaser.

2.9. Exclusive Use of Processor. Seller understands and agrees that the services of Processor are the exclusive means by which Seller can and shall process any and all of its credit and debit card transac ons.

American Funding Group                     866-950-7575                Initials:                                              9
                                                                       Date:



2.10. <u>Working Capital Funding</u>. It shall be a material breach by Seller of this Agreement for Seller to accept any third party merchant cash advance, receivables purchasing, loan or other form of financing without the express prior written consent of the Purchaser, which consent Purchaser may withhold in its sole and absolute discretion. For greater certainty and without limitation, the foregoing sentence shall not be construed as to characterize this Agreement as a loan agreement.

2.11. <u>Unencumbered Future Receivables</u>. Seller has good, complete and marketable title in all Future Receivables, free and clear of any and all liabilities, liens claims, charges, restrictions, conditions, options, rights, mortgages, security interests, hypotheses, equities, pledges and encumbrances of any kind or nature whatsoever (collectively, "Liens") or any other rights or interest that may be inconsistent with the transactions contemplated with, or adverse to the interests of, Purchaser. Without limiting the generality of the foregoing, all Future Receivables purchased by Purchaser hereunder shall be free and clear of any and all Liens (other than Purchaser's ownership rights thereto) at the time they become Future Receivables. All amounts received by Purchaser attributable to the Purchased Amount of Future Receivables purchased by Purchaser hereunder shall arise from bona fide sales by Seller of its goods and services to credit and debit card holders who present their credit and debit cards as payment therefore.

2.12. <u>Business Purpose</u>. Seller is a valid business in good standing under the laws of each jurisdiction in which it is organized or operates, and Seller is entering into this Agreement solely for business purposes and not as a consumer for personal, family or household purposes. Seller shall not use the Purchase Price for personal expenses, but shall instead use the Purchase Price for business purposes related to the business that it has stated that it operates in any application submitted to Purchaser or Processor.

2.13. <u>Conduct of Business</u>. Seller shall conduct its business consistent with past practice. Seller has no present intention to close or cease operating its business, in whole or in part, temporarily or permanently. As of the date hereof, Seller is solvent and is not contemplating any insolvency or bankruptcy proceeding. During the four (4) months preceding the date thereof, neither Seller nor any Principal has discussed with or among Seller's management, with counsel, or with any other advisor or creditor, any potential insolvency, bankruptcy, receivership, or assignment for the benefit of creditors with respect to Seller and no such action or proceeding has been filed or is pending. Other than as disclosed to Purchaser in a writing attached to this Agreement, no eviction or foreclosure is pending or threatened against Seller.

3.   ADDITIONAL TERMS

3.1.  <u>Sale of Future Receivables</u>. Seller and Purchaser agree that the Purchase Price paid by Purchaser in exchange for the Purchased Amount of Future Receivable is not intended to be nor shall it be construed as a loan or financial accommodation from Purchaser to Seller. By such purchase and sale, Seller transfers to Purchaser full and complete ownership of the Purchased Amount of Future Receivables and Seller retains no legal or equitable interest therein. Seller sells the Purchased Amount of Future Receivables to Purchaser in Seller's normal course of business and the Purchase Price paid by Purchaser





therefore is good and valuable considera on for such sale. Seller will use the proceeds of such sale solely for business purposes.

3.2. No Right to Repurchase. Seller acknowledges and agrees that it has no right to repurchase the Purchased Amount of Future Receivables, or any por on thereof, from Purchaser and Purchaser may not force Seller to repurchase the Purchased Amount of Future Receivables, or any por on thereof unless otherwise agreed upon by Purchaser and Seller and as long as Seller pays to Purchaser the full Purchased Amount as de ned by this Agreement.

3.3. Remedies. In the event that any of the representa ons or warran es contained in this Agreement is not true, accurate and complete, or in the event of a breach of any of the covenants contained in this Agreement, including the Seller Contractual Covenants (each of the foregoing, a "Breach"), Purchaser shall be en tled to all remedies available under law and equity, including the right to non-judicial foreclosure, and to receive all indemni ed Amounts (as de ned in and in accordance with Sec on 4.8 hereof) from Seller.

3.4. Power of A orney. In addi on to any other remedies available for viola on of the Seller Contractual Covenants, in the event that Seller changes or permits the change of the Processor accepted by Purchaser or u lizes the services of a processor other than Processor, Purchaser shall have the right, without waiving any of its rights or remedies and without no ce to Seller or Principal(s), to no fy the Processor or new or addi onal processor of the sale of the Purchased Amount of Future Receivables hereunder and to direct the exis ng or new or addi onal processor of the sale of the Purchased Amount of Future Receivables hereunder and to direct such new or addi onal processor to make payment to Purchaser of all or any por on of the amounts received or held by such processor for or on behalf of Seller to pay any amounts Purchaser is en tled to receive hereunder. Seller hereby grants to Purchaser an irrevocable power of a orney, which power of a orney shall be coupled with an interest and hereby appoints Purchaser and its designees as Seller's attorney-in-fact, to take any and all ac ons necessary or appropriate to direct any Processor or new or addi onal processor to make payment to Purchaser as contemplated by this sec on.

3.5. Security Agreement; Financing Statements. To secure performance of the Seller Contractual Covenants and all of the other obliga ons of Seller to Purchaser under this Agreement or any other agreement between Seller and Purchaser, Seller grants to Purchaser a con nuing priority security interest, subject only to the security interest of processor, if any, in the following property of Seller wherever found (collectively, the "Collateral"): (a) all personal property of Seller, including all accounts, chattel paper, documents, equipment, general intangibles, instruments and inventory (as those terms are de ned in article 9 of the Uniform Commercial Code ("UCC") in effect from time-to- me in the State of Florida) wherever located, now or herea er owned or acquired by Seller; (b) all trademarks, trade names, service marks, logos and other sources of business iden ers, and all registra ons, recordings and applications with the U.S. Patent and Trademark Office ("USPTO") and all renewals, reissues and extensions thereof (collectively "IP") whether now owned or hereafter acquired, together with any

American Funding Group        866-950-7575        Initials: _____ Date: _____        11



wri en agreement gran ng any right to us any IP and (c) all proceeds with respect to the items described in (a) and (b) above, as the term "proceeds" is defined in Article 9 of the UCC. Seller understands and agrees that Purchaser may  le one or more (i) UCC-1  nancing statements at any  me to perfect Purchaser's interests under the UCC created by this Agreement, including Purchaser's purchase and ownership of the Purchased Amount of Future Receivables and the interests described above in this Sec on 3.5 and (ii) assignments with USPTO to perfect the security interest in IP described above. The UCC-1  nancing statements (or por ons thereof) evidencing the sale of the Purchased Amount of Future Receivables shall state that such sale is intended to be a sale and not an assignment for security. Such  nancing statements also may state that Seller is prohibited from transferring Future Receivables to any person or en ty other than Purchaser, or gran ng any security interest in its accounts receivable to any person or en ty other than Purchaser un l Purchaser has received the Purchased Amount of Future Receivables and any other amounts Purchaser is en tled to receive hereunder. Seller hereby authorizes Purchaser to  le such  nancing statements and any con nua on statements or amendments thereto, and ra  es the  ling of any  nancing statement  led by or on behalf of Purchaser prior to the effectiveness of this Agreement. Purchaser's rights under this Section shall apply equally to any subsequent or other agreement between Seller and Purchaser. Seller agrees that it shall, from  me to  me promptly execute and deliver all instruments and documents, and take all further ac on, that may be necessary or appropriate, or that Purchaser may request, to perfect against Seller and all third par es the sale of Purchased Amount of Future Receivables hereunder or to enable Purchaser to exercise and enforce its rights and remedies hereunder.

3.6.   <u>Protec on of Informa on</u>.  Seller, each person signing this Agreement on behalf of Seller and each Principal, in respect of himself or herself personally, authorizes Purchaser to disclose to any third party information concerning Seller's and such Principal's credit standing (including credit bureau reports that Purchaser obtains) and business conduct. Seller and each Principal hereby waives to the maximum extent permi ed by law any claim for damages against Purchaser or any of its a liates rela ng to any (i) inves ga on undertaken by or on behalf of Purchaser as permi ed by this Agreement or (ii) disclosure of informa on as permi ed by this Agreement. The foregoing consent includes but is not limited to disclosure of informa on concerning the performance of Seller under this Agreement to third party cash advance providers or associa ons thereof.

3.7.   <u>Solicita ons</u>.  Seller and each Principal authorizes Purchaser and its a liates to communicate with, solicit and market to Seller and each Principal via regular mail, telephone, email and facsimile  nancial products, goods or services o ered by Purchaser, its a liates or any third party including those that Purchaser shares, transfers, exchanges, discloses or provides informa on with or to pursuant to Sec on 3.6. and will hold Purchaser, its a liates and such third par es harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marke ng Act of 2003), the Telephone Consumer Protec on Act (TCPA), and any and all other state or federal laws rela ng to transmissions or solicita ons by any of the methods described above.





**AMERICAN**
FUNDING GROUP

3.8. <u>Con den ality.</u> Seller understands and agrees that the terms and condi ons of the products and services o ered by Purchaser, including this Agreement and any other Purchaser documenta on (collectively, "**Con den al Informa on**") are proprietary and confidential information of Purchaser. Accordingly, unless disclosure is required by applicable law or court order, Seller shall not disclose Con den al Informa on to any person other than an a orney, accountant,  nancial advisor or employee of Seller who needs to know such information for the purpose of advising Seller ("**Advisor**"), provided such Advisor uses such informa on solely for the purpose of advising Seller and  rst agrees in wri ng to be bound by the terms of this Sec on.

3.9. <u>Publicity.</u> Seller and each Principal authorize Purchaser to use its, his or her name in a lis ng of clients and in adver sing and marke ng materials. For the term of this Agreement and for two (2) years therea er, none of Seller, any Principal or any of their a liates shall make any statements, comments, or take any ac ons whatsoever which would in any way disparage Purchaser, its parent corpora ons, a liates, o cers, directors, employees, agents or referral sources.

3.10. <u>Inspec on of Collateral and Place of Business.</u> Purchaser or its designated representa ves and agents shall have the right, during Seller's normal business hours and at any other reasonable times, to examine the Collateral where located and the interferer and exterior of any of Seller's places of business. Any such examination of any of Seller's places of business may include, among other things, whether Seller (a) has a place of business that is separate from any personal residence, (b) is open for business, (c) has su cient inventory to conduct its business and (d) has one of or more point-of-sale terminals to process credit and debit card transac ons. When performing an examina on, Purchaser or its designated representa ves and agents may photograph the interior and exterior of any of Seller's place of business, including any signage, and may photograph any Principal.

4. MISCELLANEOUS

4.1. <u>Modi ca ons; Amendments; Construc on.</u> No modi ca on, amendment or waiver of any provision of this Agreement shall be e ec ve unless the same shall be in wri ng and signed by the par es a ected. The headings of the sec ons and subsec ons herein are inserted for convenience only and under no circumstances shall they a ect in any way the meaning or interpreta on of this Agreement. For purposes of this Agreement, "Including" shall mean "including", "without limitation" and "and" shall mean "and/or". Any reference in this Agreement (a) to the singular includes the plural where appropriate, and (b) to the masculine gender includes the feminine and neuter genders where appropriate.

4.2. <u>No ces.</u> All no ces, requests, demands and other communica ons hereunder shall be in wri ng and shall be delivered by mail, overnight delivery or hand delivery to the respec ve par es. No ces to Purchaser shall be sent to the following address: 1855 Gri n Road, Suite A-370, Dania Beach, FL 33004. No ces to Seller or any Principal shall be made to the address of the Seller provided on the applica on page of this Agreement.

American Funding Group          866-950-7575           Initials: / Date: 14-9-15          13



**AMERICAN**
FUNDING GROUP

4.3.  <u>Waiver; Remedies</u>.  No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or par al exercise of any right under this Agreement preclude any other or further exercise of any other right.  The remedies provided hereunder are cumula ve and not exclusive of any remedies provided by law or equity.

4.4.  <u>D/B/A's</u>.  Seller hereby acknowledges and agrees that Purchaser may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transactions between Purchaser and Seller, including the  ling of UCC-1 Financing statements and other no ces or  lings.

4.5.  <u>Binding E ect</u>.  This Agreement shall be binding upon and inure to the bene t of Seller, Principal(s), Purchaser and their respec ve successors and assigns, except that Seller and Principal(s) shall not have the right to assign or delegate any of their rights or obliga ons hereunder or any interest herein without the prior written consent of Purchaser, which consent may be withheld in Purchaser's sole discre on. Purchaser reserves the right to assign or delegate this Agreement or any of its rights or obliga ons hereunder with or without prior no ce to Seller. Without limi ng the generality of the foregoing, Purchaser may grant a security interest in any and all of Purchaser's rights and interests pursuant to this Agreement, including Purchaser's rights and interest in and to the Purchased Amount of Future Receivables, to any secured party from whom Purchaser may now or herea er obtain  nancing, and such secured party will be entitled to enforce Purchaser's rights and interests under this Agreement, subject to an in accordance with the terms thereof.  Such secured party will have no liability for any of Purchaser's obligations under this Agreement.

4.6.  <u>Governing Law; Jurisdic on; Service of Process</u>.  THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING ALL ISSUES CONCERNING THE VALIDITY OF THE AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES, THE CONSTRUCTION OF ITS TERMS, AND THE INTERPRETATION, PERFORMANCE AND ENFORCEMENT OF THE RIGHTS AND DUTIES OF PURCHASER, SELLER AND PRINCIPAL(S) (EACH, A **"PARTY"** AND COLLECTIVELY, THE **"PARTIES"**), SHALL BE GOVERNED BY AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF ANY OTHER LAW. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE PARTIES AGREE THE LAWS OF THE STATE OF FLORIDA SHALL GOVERN THE ENTIRE RELATIONSHIP BETWEEN AND AMONG THE PARTIES, INCLUDING WITHOUT LIMITATION, ALL ISSUES OR CLAIMS ARISING OUT OF, RELATING TO, IN CONNECTION WITH, OR INCIDENT TO THIS AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES, WHETHER SUCH CLAIMS ARE BASED IN IN TORT, CONTRACT, OR ARISE UNDER STATUTE OR IN EQUITY. AS USED HEREIN, THE PHRASE "LAWS OF THE STATE OF FLORIDA" INCLUDES FLORIDA LAW WITH RESPECT TO, AMONG OTHER THINGS, ANY APPLICABLE STATUTE OF LIMITATIONS, LACHES, OR SIMILAR TIME-BASED DEFENSE THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT IS MADE AND PERFORMED IN THE STATE OF FLORIDA.  Seller and Principal(s) further irrevocably and uncondi onally consent and submit to the jurisdic on of any state or federal court si ng in Somerset County, Florida to resolve any suit, ac on, controversy, or proceeding of any kind (whether in contract, tort, statute, equity or otherwise) between or among the par es, arising out of, rela ng to, in connec on with, or incident to

866-950-7575    14



**AMERICAN**
FUNDING GROUP

this Agreement or any of the transac ons it contemplates, Seller and Principal(s) hereby agree that any of the above-named courts shall be a convenient forum for any such suit, ac on, controversy, or proceeding of any kind between or among the Par es, arising out of, related to, in connec on with, or incident to this Agreement or any of the transac ons it contemplates. Seller and Principal(s) waive, to the fullest extent permi ed by law, (i) any objec on that Seller or Principal(s) may now or later have to the laying of venue of any suit, ac on, controversy, or proceeding arising out of, rela ng to, in connec on with, or incident to this Agreement or any of the transac ons it contemplates in any of the above-named courts, (ii) any objec on to personal jurisdic on applying in any such court, and (iii) any claim that any such suit, ac on, controversy or proceeding brought in any such court has been brought in an inconvenient forum. Seller and Principal(s) agree that service of process in any such suit, ac on, controversy, or proceeding may be served on any of them by mailing or delivering a copy of the process to any of the addresses set forth in this Agreement or nay other address Seller or Principal(s) has provided to Purchaser. Nothing set forth in this sec on a ects the right to serve process in any other manner permi ed by law.

4.7.  <u>Costs</u>. Purchaser shall be en tled to receive from Seller and Principal(s), and Seller and Principal(s) shall pay: (a) all reasonable costs associated with a Breach and the enforcement thereof, including court costs and attorneys' fees, and (b) a fee of $25.00 (or, if less, the maximum amount permi ed by applicable law) for each rejected or dishonored check, ACH debit, or wire transfer withdrawal, as the case may be, it being understood that Purchaser has the right to receive such fee for each business day on which Purchaser or its designee a empted and was unable to debit or otherwise withdraw from the accounts of Seller or Principal(s) (including the Account), as authorized herein, the total amount Purchaser was en tled to receive hereunder as of such date.

4.8.  <u>Indemni ed Amounts</u>. In the event of a Breach, Seller shall assume liability for and hereby agrees to indemnify, protect and hold harmless Purchaser, its a liates, and its and their o cers, directors, employees, agents, representa ves and assignees (collectively, the "**Indemni ed Par es**"), from and against any and all liabili es, claims, losses, obliga ons, damages, penal es, suits, ac ons, controversies, or proceedings of any kind, imposed upon, incurred by, or asserted against any of the Indemni ed Par es, in any way arising form, in connec on with, rela ng to, or incident to such Breach (collec vely, "**Indemni ed Amounts**"), including the payment of all costs and expenses of every kind for the enforcement of Purchaser's rights and remedies hereunder, including reasonable attorneys' fees, costs of any trial, appellate court proceeding, administra ve proceeding, or any nego a ons or consulta ons with respect to any such Breach. Such Indemni ed Amounts will bear interest at the highest rate of interest permi ed by applicable law un l paid.

4.9.  <u>Term and Survival</u>. This Agreement shall con nue in full force and e ect un l all obliga ons hereunder have been sa s ed in full; provided, however, that Sec ons 1.3, 1.4, 0, 3.3, 3.4, 0, 3.8, 3.9, 3.10, and 4 shall survive any termina on of this Agreement.

4.10.  <u>Severability</u>. In case any one or more of the provisions contained in this Agreement should be invalid,

Initials:
Date:



AMERICAN
FUNDING GROUP

illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be a ected or impaired thereby.

4.11. Counterparts; Facsimile and Electronic Signatures. This Agreement may be signed in one or more counterparts, each of which shall cons tute an original and all of which when taken together shall cons tute one and the same agreement. Facsimile signatures shall be deemed to be original signatures and each Party hereto may rely on a facsimile signature or electronic signature as an original for purposes of enforcing this Agreement.

4.12. En re Agreement. This Agreement contains the en re agreement and understanding among Seller, Principals and Purchaser and supersedes all prior agreements and understandings, whether oral or in wri ng, rela ng to the subject ma er hereof unless otherwise speci cally rea rmed or restated herein. Seller and Principals each acknowledge and agree that he, she or it is not relying on any representa ons not speci cally embodied in this Agreement.

4.13. Jury Trial Waiver. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION, CONTROVERSY OR PROCEEDING OF ANY KIND ON ANY MATTER ARISING OUT OF, RELATING TO, IN CONNECTION WITH, OR INCIDENT TO THIS AGREEMENT OR ANY TRANSACTIONS IT CONTEMPLATES OR THE ENFORCEMENT HEREOF, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.14. Class Ac on Waiver. The par es acknowledge and agree that the amounts at issue in this transac on and any disputes that may arise between them are large enough to jus fy dispute resolu on on an individual basis. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST ANY OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW.

4.15. Intent of the Par es. The par es intend and agree that this transac on is a purchase and sale and not a secured loan.

4.16. Interpreta on of Agreement. This Agreement shall be liberally construed in favor of the Purchaser.

4.17. Waiver of Claims. Seller and each Principal hereby waives any and all claims that the transac on(s) contemplated by this Agreement is/are anything other than a purchase and sale and speci cally and uncondi onally waive any and all claims, causes of ac on, or complaints that this transac on is a loan.

American Funding Group          866-950-7575          Initials: ___  Date: _____          16



## AMERICAN FUNDING GROUP

### APPENDIX A; THE FEE STRUCTURE

A. **ORIGINATION FEE-** $2,995.0 -- TO COVER Underwriting and related expenses.

B. **ACH Program Fee-** $1,995.00 ACH's are labor intensive and are not an automated process, requiring us to charge a fee to cover those costs.

C. **NSF Fee ( Standard)-** $ 25.00 (each) up to **FIVE TIMES ONLY** before default is declared.

D. **Rejected ACH** $ 100.00—when the merchant directs the bank to reject our Debit ACH.

E. **Bank Charge Fee-** $ 50.00—When a merchant requires a change of account to be debited requiring us to adjust our system.

F. **Blocked Account** $2,500.00 When a merchant BLOCKS account from our Debit ACH which places them in default (per contract)

G. **Default Fee-** $ 2,500.00--- When a merchant changes bank account cutting us off from our collections.

H. **Miscellaneous Services Fees-** _____ Merchant shall pay certain fees for services related to origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $ 49.00 for a Fed wire or$ 0.00 for bank ACH. The current charge for underwriting and origination of each merchant Agreement is paid from the funded amount. Additional copies of prior monthly statements will incur a fee of $ 10.00 each.

MERCHANT # 1                                    MERCHANT # 2

Print Dominick Voso                            Print _____

X _____                     X _____

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

AMERICAN
FUNDING GROUP

| SELLER | |
| --- | --- |
| Dominick Voso | |
| **Print name and title** | Signature |

| Principal 1 / Guarantor 1 | |
| --- | --- |
| Dominick Voso | |
| Print Name | Signature |

| Principal 2 / Guarantor 2 | |
| --- | --- |
| Print Name | Signature |

| Principal 3 / Guarantor 3 | |
| --- | --- |
| Print Name | Signature |

| PURCHASER   American Funding Group | |
| --- | --- |
| Print name and title | Signature |

American Funding Group          866-950-7575          17