# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DOMINICK R. VOSO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHARON TERESA EWTON, KENNETH FRANK, and FREDERIC W. FRANK, III, | ) ) | |
| | ) | No. 16-cv-00190 |
| Defendants. | ) | |
| | ) | Judge Amy J. St. Eve |
| | ) | |
| SHARON TERESA EWTON, KENNETH FRANK, FREDERIC W. FRANK, III, and MATTHEW G. SMITH, | ) ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| DOMINICK R. VOSO and PURSUIT BEVERAGE COMPANY, LLC, | ) ) | |
| | ) | |
| Counter-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In May 2016 Counter-Defendants Dominick Voso and Pursuit Beverage Company ("PBC"), collectively, "Counter-Defendants," and Counter-Plaintiffs Sharon Ewton, Kenneth Frank, Frederic Frank, and Matthew Smith ("Counter-Plaintiffs") reached a settlement agreement. After Counter-Defendants failed to meet their obligations under the settlement agreement, Counter-Plaintiffs filed a Motion to Enforce the Settlement Agreement [116], which the Court granted on January 25, 2017 [127, 128]. The Court ordered Counter-Defendants to make a final payment under the settlement agreement within 30 days ("the Court's Order"). Counter-Defendants have failed to make that final payment and now, Counter-Plaintiffs have

brought the present Motion for a Finding of Contempt [129]. Counter-Plaintiffs also filed a supplemental brief with additional financial information in further support of contempt. For the reasons below, the Court grants this motion.

## LEGAL STANDARD

To prevail on a request for a civil contempt finding, the movant must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015). A finding of willfulness is not required to hold a party in civil contempt; all that must be shown is that a party has not been reasonably diligent in attempting to accomplish what was ordered. *SEC v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007). "A civil contempt order can . . . be intended to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Ohr*, 776 F.3d at 479.

The Court has discretion in its choice of remedies for civil contempt. The power to hold a party in contempt is governed by the requirements of full remedial relief, so the Court can take whatever action is necessary to remedy the contempt. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187 (1949); *see* 11 Wright & Miller § 2960 at 586. Three remedies are commonly imposed by courts. First, the Court may jail a disobedient party. Incarceration can only be used to coerce the party to comply with a court order—once the party complies, she must be released. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) (noting that civil contemnor "holds the keys of his prison in his own pocket") (quotations omitted). Second, the Court may impose fines on a party. These fines can be used either to coerce compliance with a court order or to

compensate an injured party for the damages caused by the contumacious party's failure to comply. *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009). Third, the Court may award attorneys' fees, court costs, and discovery costs to an injured party that has pursued a contempt judgment. *Shakman v. Democratic Org. of Cook Cnty.*, 533 F.2d 344, 351 (7th Cir. 1976) ("An award of costs and attorneys' fees is clearly proper and wholly independent of an award of compensatory damages.").

## ANALYSIS

Counter-Defendants do not dispute that they have failed comply with the Court's Order and have failed to make even a partial payment to Counter-Plaintiffs. Instead of arguing that Counter-Plaintiffs have not satisfied the elements required for a contempt findings, Counter-Defendants argue that the Court should deny this Motion for three primary reasons: (1) Voso and PBC are attempting to comply with the Court's Order, but they are unable to make final payment due to PBC's financial predicament; (2) Seventh Circuit precedent dictates that a party cannot enforce a settlement agreement through a contempt proceeding; and (3) a finding of contempt would violate Counter-Defendants' Seventh Amendment right to trial by jury. The Court addresses each of these arguments in turn.

**I.    Counter-Defendants Have Failed to Demonstrate an Inability to Pay Defense**

Counter-Defendants first argue that they have been attempting to comply with the Court's Order, but they "simply are unable to make the final payment at this time." In support of this argument, Counter-Defendants note that they have provided K-1 forms and PBC's bank records to Counter-Plaintiffs. Counter-Defendants explain that they are working with a consultant to develop a plan to raise the funds necessary to make their final payment to Counter-Plaintiffs. Thus far, they have not been able to raise the necessary funds primarily because according to

Counter-Defendants, PBC's key investor, Clint Lohman, directed that PBC's available capital be used for operational expenses, licensing fees, to repay high-interest debt, and only after those obligations were met, to make settlement payments. Currently, Lohman is no longer providing capital, and Counter-Defendants argue that PBC cannot make the final payment without becoming insolvent. Counter-Defendants note that they also offered to sell PBC to Counter-Plaintiffs in lieu of making a final settlement payment, but Counter-Plaintiffs rejected this offer.

The Seventh Circuit has held that "[i]nability to pay is a valid defense in a contempt proceeding, but the party raising the defense has the burden of proving its inability to pay." *In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (citing *United States v. Rylander,* 460 U.S. 752, 757 (1983)). "[A] mere assertion of inability to pay . . . [does not] preclude[] a finding of contempt." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 287 (7th Cir. 2014) (citations omitted). To succeed on an inability to pay defense, "[t]here must be an adequate factual basis to support the defense, and "where, as here, there has been no effort at even partial compliance with the court's order, the inability-to-pay defense requires a showing of a 'complete inability' to pay." *Res. Tech. Corp.*, 624 F.3d at 387 (citations omitted). Put differently, "under the circumstances here, [Counter-Defendants] ha[ve] the burden of establishing 'clearly, *plainly,* and *unmistakably*' that compliance is *impossible*." *Id*. (emphasis in original) (citing *Huber v. Marine Midland Bank,* 51 F.3d 5, 10–11 (2d Cir. 1995).

In light of the high standards imposed on parties that have made no effort at even partial compliance, courts regularly reject inability to pay defenses where the party cannot show that payment is plainly impossible. In *Resource Technology Corp.*, 624 F.3d at 387, for example, the Seventh Circuit upheld the district court's rejection of a debtor's inability to pay defense because the debtor had made prior representations about its assets indicating that it would be able to make

4

a complete payment as ordered by the court. The debtor submitted financial documents to the court and argued that the money and assets in its accounts were unavailable to make a payment, but the court rejected these arguments and held that the debtor "failed to demonstrate that it had been reasonably diligent and energetic in attempting to accomplish what was ordered . . . and so did not carry its burden of producing sufficient evidence to establish its inability to pay." *Id*. at 388 (citations omitted); *see also Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 712 (7th Cir. 2014) (upholding finding of contempt where party failed to point to any steps it was taking to make final payment owed to opposing party and submitted incomplete financial documents in support of inability to pay argument); *Heyne v. Nick's Am. Pancake & Café, Inc.*, No. 3:11-CV-305 JD, 2016 WL 270110, at *5 (N.D. Ind. Jan. 22, 2016) (rejecting inability to pay defense due to lack of specific financial evidence); *Krumwiede v. Brighton Assocs., L.L.C.*, 2006 WL 2714609, at *4 (N.D. Ill. 2006) (finding plaintiff's bare assertions insufficient to demonstrate an inability to pay).

Here, Counter-Defendants have not made any "effort at even partial compliance with the court's order," and thus, they must show that payment is plainly impossible. *Res. Tech. Corp.*, 624 F.3d at 387. Counter-Defendants included in their response brief excerpts from financial spreadsheets showing PBC's expenditures, capital investments, and debt and equity. As in *Resource Technology Corp.*, however, these financial documents are insufficient to show that Counter-Defendants have "been reasonably diligent and energetic in attempting to accomplish what was ordered," that is, to make its final settlement payment. *Id*. These financial disclosures fall short for several reasons.

First and most importantly, Counter-Defendants did not provide any financial information relating to Voso as an individual. Voso is personally liable in this matter and as

such, he could use his personal assets and cash on hand to comply with the Court's Order and make a final payment. Voso, however, has not provided his personal credit card or bank account information, much less any information about other personal assets that could be leveraged to make a payment to Counter-Plaintiffs.

Second, the Court finds it troubling that Voso took a compensation draw of $134,000 instead of using some or all of that money to pay Counter-Plaintiffs. While Counter-Defendants argue that this payout was not salary and was instead a "reduction of his member capital account," this argument is unpersuasive—Counter-Defendants easily could have re-allocated this money towards making a final payment in line with the Court's Order. (R. 139, Resp. to Mot. for Contempt 6.) Counter-Plaintiffs supplemental brief provides further evidence that Voso may be personally mismanaging PBC's corporate funds and using PBC corporate funds to pay himself and his family members. (R. 151, Supplemental Brief.) Bank records indicate, for example, that between April 12, 2016 and March 31, 2017, Voso wrote checks to himself from PBC's operating account in the total amount of $152,653, and in that same time period, Clint Lohman transferred $200,000 into Voso's personal checking account.[1] (*Id.* 3-5.) Additionally, bank records also show credit card payments from PBC's account to Voso's personal credit card, payments to Voso's family from PBC accounts, and unexplained ATM withdrawal transactions involving PBC funds. (*Id.* 5-7.) Counter-Defendants argue that these transactions were related to necessary business expenses and payments that Lohman approved, and while that may be true, the transactions also provide evidence of significant capital that Counter-Defendants could have used, at least in part, to make a settlement payment. (R. 152, Opp'n to Supplemental Brief.)

---

[1] While Voso argues that Lohman transferred this money as payment for his shares in PBC, this argument belies the fact that Voso is personally liable as a Counter-Defendant and could have used that money to make payments pursuant to the Settlement Agreement.

6

Finally, Counter-Defendants' financial excerpts and assertions in their response and supplemental briefs indicate that they have simply prioritized other debt obligations as well as operations costs—first at the direction of Lohman and now at their own direction—over the money owed to Counter-Plaintiffs as part of the settlement agreement. This prioritization with some of the funds may have been sensible from the business perspective of PBC, but Counter-Defendants previously assured the Court that they would use that incoming capital to make settlement payments,[2] and their failure to prioritize these payments provides a clear indication that Counter-Defendants have not been diligent and energetic in their efforts to make final payment as ordered by the Court. In Counter-Defendants' Supplemental Opposition brief, for example, they explain that Voso has recently used his personal funds to make a $13,000 delinquent tax payment and pay $88,000 in legal fees related to this case. (R. 152, Opp'n to Supplemental Brief 6-7.) These payments are once again examples of Counter-Defendants, and Voso individually, prioritizing certain debts over his obligation to pay Counter-Plaintiffs under the Settlement Agreement and under this Court's Order.

Accordingly, Counter-Defendants have failed to meet their burden of proving their inability to pay.

## II. The Court May Find a Party in Contempt for Failure to Comply With Its Order

Contrary to Counter-Defendants' argument, Counter-Plaintiffs are not seeking a finding of contempt to enforce a settlement—the Court has already entered an Order, on January 25, 2017, enforcing the parties' settlement and ordering Counter-Defendants to make their final payment owed under the settlement agreement. Instead, Counter-Plaintiffs are seeking contempt

---

[2] Counter-Defendants previously asserted that Clint Lohman provided assurances that he would raise the funds for Counter-Defendants to make a final settlement payment. (R. 146, Tr. of March 27, 2017 Hearing, 3: 12-24.)

7

for Counter-Defendants' violation of that January 25, 2017 Order because Counter-Defendants have not made a final payment, or any payment for that matter since the Court's January 25 Order. Courts regularly hold parties in contempt, where, as here, a party has failed to comply with a court order to make a payment to the opposing party, even if the payment is part of a settlement agreement. *Towne v. Gee Const., LLC*, No. CIV.A. 11-1884, 2014 WL 4981442, at *2 (E.D. La. Oct. 6, 2014) (finding party in civil contempt in order "to coerce compliance with this Court's order enforcing the specific terms of the settlement agreement and to compensate the plaintiff for the defendants' continued noncompliance"); *In re Res. Tech. Corp.*, No. 08 C 4040, 2008 WL 5411771, at *2 (N.D. Ill. Dec. 23, 2008) (explaining that Court found party in civil contempt, directed party to pay trustee $500,000 immediately, and imposed a civil fine of $5,000 for every calendar day party failed to comply); *Buffalo Wings Factory, Inc. v. Mohd*, 574 F. Supp. 2d 574, 581 (E.D. Va. 2008) (holding party in contempt for failure to comply with consent order enforcing settlement and ordering party to pay damages and attorneys' fees); *Lovell v. Evergreen Res., Inc.*, No. C-88-3467 DLJ, 1995 WL 761269, at *6 (N.D. Cal. Dec. 15, 1995) (holding party in civil contempt for failure to comply with court order requiring him to make settlement payment and ordering party to make final payment and pay attorneys' fees).

Counter-Defendants also cite to Seventh Circuit case law they purport prevents this Court from using its contempt power to enforce a settlement agreement. This case law, however, is inapposite. In two of the cited cases, the movants attempted to rely solely on the terms of the settlement agreement to institute contempt proceedings, and the Seventh Circuit held that a contempt finding was not permissible because the specific terms of the agreement were not set forth in a court order. *See D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455 (7th Cir. 1993); *H.K. Porter Co., Inc. v. Nat'l Friction Prods. Corp.*, 568 F.2d 24 (7th Cir. 1977). Those cases do not

8

apply here where Counter-Plaintiffs obtained an explicit Order to enforce the settlement agreement and make a final payment and are now seeking a finding of contempt for Counter-Defendants' violation of that order. Finally, as noted by Counter-Plaintiffs, the other case upon which Counter-Defendants rely, *Tranzact Technologies, Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005), supports the proposition that the Court may hold Counter-Defendants in contempt, stating:

> It is true that a settlement agreement may not be enforceable through a contempt proceeding when its terms are not expressly set forth in a court order . . . but this is not such a case. The language at issue here is not simply incorporated by reference into the court's order, but specifically set forth in the order itself. It is clear, unambiguous, and perfectly amenable to being enforced through a contempt proceeding.

Here, as in *Tranzact*, the Court did not simply refer to the settlement agreement, but instead explicitly and unambiguously directed Counter-Defendants to make a final payment within 30 days. Accordingly, as in the cases cited above, the Court may hold Counter-Defendants in contempt.

### III. The Seventh Amendment Does Not Prevent the Court from Finding Counter-Defendants in Contempt

Finally, Counter-Defendants argue that the Court may not make a civil contempt finding because it would violate their Seventh Amendment right to a jury trial and because Counter-Plaintiffs have not alleged the elements of a breach of contract. As to the first argument, it is well-established that "civil contempt is an equitable action . . . and litigants have never been entitled to a jury trial for suits in equity." *Trudeau*, 579 F.3d at 775 (citations omitted); *see also Shillitani v. United States*, 384 U.S. 364, 365 (1966) ("We hold that the conditional nature of these sentences renders each of the actions a civil contempt proceeding, for which indictment and jury trial are not constitutionally required."). Counter-Defendants' argument that Counter-Plaintiff must allege the elements of a breach of contract for the Court to make a contempt

9

finding also fails. Simply put, a Court may make a finding of contempt when a party violates its unambiguous order, and the Court need not address the elements of breach of contract or any other underlying cause of action. *See Ohr* 776 F.3d at 474 (describing elements required for contempt finding).

## CONCLUSION

For the foregoing reasons, the Court grants Counter-Plaintiffs' motion for a finding of contempt and orders Counter-Defendants to take the following remedial actions on or before July 21, 2017: (1) make a good faith payment of $10,000 to Counter-Plaintiffs; (2) submit to the Court a written plan for repayment; (3) provide the Court and Counter-Plaintiffs with bank records for all of Voso's personal accounts; and (4) provide the Court with documentation relating to any of Voso's personal assets with a value of $20,000 or more. The Court also orders Counter-Defendants to provide to the Court weekly written status reports, starting 14 days hereof, updating the steps they have taken to make a final payment to Counter-Plaintiffs.[3]

**Dated:** June 20, 2017

                                                AMY J. ST. EVE
                                                United States District Court Judge

---

[3] Given Counter-Defendants' financial difficulties, the Court refrains from awarding attorneys' fees and costs.